HOYT v. THE CITY OF EAST SAGINAW ET AL.

## Jesse Hoyt v. The City of East Saginaw et al.

*Taxation for Local Improvements.*  It is competent for the Legislature to author-
ize municipal corporations to assess the expense of local improvements upon
property deemed to be particularly and specially benefitted thereby in pro-
portion to the benefit received.  The Constitution does not expressly prohibit
it and there is nothing in the nature of the power of taxation inconsistent
with it.

*Mode of assessing benefits : Within defined districts : By commissioners.*  The Legis-
lature may confer on the Common Council power to judge what property is
specially benefitted by the improvement and to define the taxing district
accordingly ; and the mode prescribed by the charter to East Saginaw, of
apportioning the tax throughout the district which the Council had defined,
in proportion to the benefit which the several parcels of land receive, as
determined by impartial commissioners, is free from objection.

*Common Council : Jurisdiction.*  When a statute provides that when a City Coun-
cil shall decree an improvement necessary, they shall so declare by resolution ;
the declaration of the necessity for the improvement, is a distinct preliminary
act, which is indispensable to give the Council jurisdiction and without it
the whole proceeding is a nullity.

*Heard May 7.  Decided July 12.*

Appeal in Chancery from Saginaw Circuit.

The bill in this cause was filed to enjoin the collection
of an assessment for an improvement on Genesee street in
East Saginaw.  The greater part of the cost of which was
assessed upon the property in the vicinity benefitted, in pro-
portion to the benefit.  A perpetual injunction was granted
in the Court below.

*John J. Wheeler*, for complainant.

1. The provisions of the Charter regulating proceedings
for making improvements and assessing taxes therefor, are
unconstitutional.

The expense of the improvement is ascertained by the
Council, the amount to be specially assessed and property
deemed to be benefitted, determined by the Council, and
their commissioners are appointed to assess that amount on
the property designated in proportion to the benefit each
piece shall be deemed to have acquired by the making of

the improvements:—*Laws of 1858, pp. 1,010. 1,011, 1,012 ; Laws of 1861, p. 50.*

There is not and cannot be any rule of apportionment in this case :—*Williams v. Detroit. 2 Mich. 560 ; Woodbridge v. Detroit, 8 Id. 274.*

In the case cited in *2 Mich.*, great stress is put on the fact that there was a uniform rule of apportionment. See *pp. 570 and 571.*

In the East Saginaw Charter, there is and can be no rule. Each case stands by itself, and is left to the whim, prejudice, or judgment of the Council in being, both as to amount to be assessed and property on which to be assessed, and then each piece of property is left to the opinion of an irresponsible tribunal appointed for the particular case, and no other. This is directly condemned in *2 Mich., p. 572,* and *8 Mich., 292 and 293.*

2. The law provides (*L. 1859, p. 997,* §§ *1 and 2*) that the necessity for making the improvement shall be determined by a resolution of the Council, and we submit that a resolution ordering the improvement does not comply with the law.

3. The resolution of the Common Council is not such a resolution as the charter prescribes.—*L. 1859, p. 977, § 2.*

*B. J. Brown,* for defendant.

1. The provisions of the charter of the city of East Saginaw authorizing special assessments for public improvements are not unconstitutional, inasmuch as such assessments are required to be made upon the owners and occupants of lands benefitted, in proportion to the advantage which each shall be deemed to acquire by making such improvements. *Vide Title 6 of charter,* §§ *37, 38, 39 ; 1 Kent's Com. 448 ; People v. Mayor of Brooklyn, 4 N. Y. 419 ; Woodbridge v. Detroit, 8 Mich. 274 ; Cooley on Const. Lim. 498, et seq. ; Sears v. Cottrell, 5 Mich 256.*

2. If the object of the charter in declaring that the tax shall be and remain a lien from the confirmation of the assessment roll, is other than that of regulating the relation of vendor and vendee, it is not clearly apparent. At all events the complainant can found no claim upon it to the equitable interference of the court, as the bill does not aver that there were not goods and chattels out of which the tax could have been satisfied. The tax remained a personal charge against the complainant, and it was the duty of the Marshal to enforce collection by distress and sale of personal property.—*Sec. 44, Title, 6, of Charter.* In general, a distress and sale of personal property to satisfy an illegal tax, will not be restrained by injunction.—*Blackwell on Tax Titles, 566 ; Williams v. Mayor, 2 Mich. 562 ; Green v. Mumford, 5 Rhode Island, 472 ; Wilson v. Mayor, 4 E. D. Smith, 675 ; McCoy v. Chillicothe, 3 Ohio, 370 ; Van Doren v. Mayor, 9 Paige, 388 ; Mooers v. Smedley, 6 Johns. Ch. 29 ; Dodd v. Hartford, 25 Conn. 232 ; Betts v. Williamsburg, 15 Barb. 255.*

3. A court of equity will not restrain the collection of a tax merely because the proceedings on which it is founded are irregular or even void. It must also appear that the proceedings are inequitable, that it will be against conscience to allow them to go on, and that the party applying for relief is in no fault.—*Jackson v. Detroit, 10 Mich. 248 ; Betts v. Williamsburg, 15 Barb. 255 ; Hovey v. Smith, 1 Id. 372 ; Warden v. Board of Supervisors, 14 Wis. 618 ; Whitney v. Brunette, 3 Id. 621 ; Miltimore v. Supervisors, 15 Id. 9 ; Bond v. Kenosha, 17 Id. 284 ; Dodd v. Hartford, 25 Conn. 232 ; Susquehanna Bank v. Board of Supervisors, 25 N. Y. 312 ; Albany Northern R. R. Co. v. Brownell, 24 Id. 345.*

The resolution of the Common Council of June 18th, 1867, affirms and ratifies all the proceedings of that body, the contract for the work inclusive—which it does not in terms rescind. This is the necessary effect of all subse-

quent proceedings which are based upon such ratification and especially of the confirmation of the roll.—*Cushing's Law and Practice of Legislative Assemblies*, § 2,104; *Peterson v. Mayor*, 17 N. Y. 449; *People ex rel. Smith v. Flagg*, Id. 584; Str. 1,066; 4 Term Rep. 109; *Commonwealth v. Herrick*, 6 Cush. 465; *People v. Mayor* 32 Barb. 35.

COOLEY CH. J.

The bill in this case was filed to enjoin the collection of an assessment which had been made for the grading, ditching and planking of Genesee street in the city of East Saginaw. It appears that the Common Council, by resolution, determined that the cost and expense of the improvement would be the sum of $15,612, and that the property in the vicinity of the improvement would be benefitted by it to the amount of $11,700; and that they consequently assumed on behalf of the city the payment of $3,912, and directed the sum of $11,700 to be assessed upon the property in the vicinity which was particularly described in their resolution. The assessment was made accordingly, and the complainant who was owner of a portion of the property described and assessed, seeks to enjoin the assessment on various grounds which are particularly set out in his bill.

It is not disputed that the provisions of the charter are such as, if valid, will warrant this mode of apportioning and assessing the expense of such improvements; and on reference thereto it appears that they establish a basis for the assessment, and require it to be made by commissioners appointed for the purpose upon the several parcels of land in proportion to the benefit each shall be deemed to have acquired by the making of the improvement. It is claimed, however, that those provisions are in conflict with the constitution and void because, as it alleged, there

is and can be under them no rule for the apportionment of the expense, inasmuch as the Council, according to their own "whim, prejudice or judgment" determine upon what property the expense shall be levied, and "an irresponsible tribunal appointed for the particular case and no other" makes the assessment. To this position the cases of *Williams v. The Mayor &c., 2 Mich. 560 and Woodbridge v. Detroit, 8 Mich. 274,* are cited, neither of which I think will give it any countenance.

I have no doubt it is entirely competent for the Legislature to authorize municipal incorporations to assess the whole or any portion of the expense of these local improvements upon the property deemed to be particularly and specially benefitted thereby, in proportion to the benefit received, if in the judgment of the Legislature that rule of apportionment is most just and equitable. There is nothing in the constitution which expressly prohibits it, and nothing in the nature of the power of taxation which is inconsistent with it. This mode of assessing such burdens has been repeatedly sustained by the Courts of other States and is supported by the reasoning of the Court in the case of *Williams v. The Mayor &c.,* and by that of the majority of the court in *Woodbridge v. Detroit.* I shall content myself, therefore, in this case with a reference to those cases and to that of *Motz v. Detroit,* just decided.

Whatever may be the basis of apportionment for such a tax, a taxing district must necessarily be established; and the Legislature in the charter before us have deemed it proper to empower the Common Council to judge what property is specially benefitted by the improvement and define the taxing district accordingly. As the question in such case is one which can only properly and intelligently be decided upon personal inspection of the improvement and the manner in which it will affect the neighboring property, it is obvious that the Legislature is not the proper authority to

pass upon it, and the natural and proper course would seem to be to refer it to some local tribunal. If the Legislature consider the Common Council the proper tribunal for this purpose, there is not only no constitutional principle which precludes the question being referred to their judgment, but there is a manifest propriety in the reference. And the mode prescribed by the charter of apportioning the tax throughout the district which the Common Council have defined in proportion to the benefit which the several parcels of land receive, as determined by impartial commissioners, is equally free from valid objection.

The charter not being found defective, it remains to be seen whether the city authorities have complied with its provisions in the various steps taken by them and which are contested in this suit. Nearly every proceeding of the Common Council is attacked as irregular, illegal and void; but as we find ourselves compelled to hold that the first step in the proceedings, which must be the foundation of all the others, and without which the Council would have no jurisdiction to proceed at all, was not taken in compliance with the charter, it does not seem to be important, and is not in accord with our usual practice to consider the objections taken to the subsequent proceedings, all of which are rendered immaterial by the neglect to comply with the law in the preliminary action.

The charter of the city of East Saginaw, provides that " the Common Council shall have full power to lay out, establish, open, extend, widen, straighten, alter, close, fill in or grade, vacate or abolish any highways, streets, avenues, lanes, alleys, public grounds or spaces in said city whenever they may deem it a necessary public improvement," and that " whenever the Common Council shall deem any such improvement necessary, they shall so declare by resolution, which shall be drawn by the attorney of the corporation, and said resolution shall describe the contemplated improve-

ment."—*Laws of 1859, p. 997, §§ 1 and 2 of Title 6.* This is made by the charter a necessary preliminary to the ordering by the Council of any of the public improvements here enumerated or to the levying of any assessment therefor; and however unimportant may seem this declaration in particular cases, the Council have no authority to dispense with it.

From the records of the Common Council, it appears that the first action in reference to this improvement was had on the eleventh day of June, 1866, when a petition of citizens was presented asking for the grading, turnpiking and planking of Genesee street, from Jefferson street to the German Colony road; whereupon it was "*Resolved*, That the petition be received, and the improvement be ordered, the grading and turnpiking and one-half of the expense of planking to be paid by the property benefitted, and the expense of one-half the planking to be paid by the city at large." On the same day and subsequently other resolutions regarding the improvement were adopted, more particularly ordering the improving, grading, ditching, turnpiking, draining and planking of Genesee street between the points above mentioned, and prescribing the manner in which it should be done, and apportioning the amount of expense between the property benefited and the city at large; but there is no resolution entered upon the minutes of the Council which, in the words of the charter, declares the improvement necessary, or comes any nearer such declaration than the one above quoted.

It may seem perhaps, that the Legislature have been over particular in requiring from the Council an express preliminary declaration that they deem the improvement necessary, when the fact that they order it to be made is evidence that such is their opinion; and it has been argued in this case that the resolution of June 11, 1866, ought to be accepted as equivalent to the one made necessary by the

charter, and as a sufficient compliance with the legislative requirement. It is evident, however, that if we hold this resolution sufficient, we also hold that the provision cited from the charter is idle, and is one a compliance with which may be dispensed with in any case. We have no authority to treat any part of a legislative enactment which is not ambiguous in itself and is capable of reasonable application, as so far unimportant that it is matter of indifference whether it is complied with· or not. We must suppose the legislature saw sufficient reason for its adoption, and meant it to have effect; and whether the reason is apparent to our minds or not, we have no discretion to dispense with a compliance with the statute.

We can well conceive, however, that the Legislature might suppose it possible that members of a city Council could be induced to vote to direct a certain work to be done when they would hesitate to say, upon their official oaths, that the work was actually necessary if that was the specific question upon which ·they must record their opinion.

It is sometimes the case, that some portion of the legislative enactment prescribing the course of proceeding to be pursued by public officers, can be treated as directory merely, and not mandatory; so that a failure in strict compliance will not defeat the whole proceeding; but this can never be the case, where that which is required to be done is in the nature of a condition precedent to subsequent action, and not simply a step in the course of the proceedings prescribed with a view to a regular, orderly and prompt transaction of the business in the progress of which such step is to be taken. The courts in their anxiety to sustain the action of public officers, where irregularities have occurred without the intervention of bad faith, have gone to the very extreme in holding legislative enactments to be merely directory, and have perhaps sometimes made decisions which dispensed with those things which the Legislature intended as

HOYT *v.* THE CITY OF EAST SAGINAW ET AL.

essentials. The duty of the courts is to examine the statute carefully with a view to giving the legislative intention effect; and they ought to sustain defective proceedings only in those cases where it is fairly inferable that they observe that intent more nearly by sustaining them than by setting them aside on account of the omitted formality. Such inference is not admissible in reference to those things which are preliminary and jurisdictional.

It is evident, I think, that under the charter of East Saginaw, the declaration of the necessity for the improvement is a distinct act from and precedes the order that the improvement shall be made. It is the commencement of the proceeding, and is as indispensible to give the Council jurisdiction as is process or the voluntary appearance of parties in civil actions to give jurisdiction to a court. It is the first of several steps, which if duly and regularly taken, may result in fixing a lien upon the property of the citizen, and even in depriving him of it against his will. This step having never been taken, the whole proceeding is a nullity.

The formal objections which are taken by the defendants to the remedy the complainant has sought, are all met by previous decisions of this court.—*Palmer v. Rich, 12 Mich. 414; Scofield v. City of Lansing, 17 Mich. 437.* We think the Circuit Judge was right in decreeing a perpetual injunction, and the decree must be affirmed with costs.

CHRISTIANCY and GRAVES JJ. concurred.

CAMPBELL J.

I concur in setting aside the proceedings for the preliminary irregularity mentioned by the Chief Justice.

I do not construe the statute throughout precisely as it is accepted by the majority of the court. The charter provided a choice of two methods for ordering paving to be

done. One is by requiring each owner to pave in front of his own property. The other is by establishing a district, within which the expense is to be apportioned on all property, according to its relative benefits.

I have expressed my views heretofore upon the former question, and it is not involved in this case, which purports to have arisen under the district system.

I concur entirely in the authority of the Council, to create districts over which the tax is to be spread. I think it is the only system which is admissible without violating the principle of taxation, which should be applied over some large or small territory impartially. But it seems to me that to allow the expenses to be apportioned without reference to any uniform rule, and to be charged to each lot to the extent to which the commissioners consider it benefitted, is to allow them to fix the tax according to their own will, and by no system whatever. Unless there is some rule whereby it can be determined whether the charge against lands is correct or not, the burden is not, in my judgment, in any true sense a tax. I do not see why the same principle would not allow the City or the Legislature to single out arbitrarily the persons or the property and to declare what each one should pay. I do not think that any tax can be sustained, where the unchecked will of a commissioner can fix the sum which each lot is to pay according to his own fancy, and without reference to any standard by which a court can try its correctness and uniformity.

Nor do I think this a proper construction of the charter. That requires the commissioners to assess or estimate the value of each lot. We cannot properly hold any such provision to have been inserted without some reason, and the only legitimate purpose of the valuation must have been to furnish a means of apportionment. Taxation according to value is the usual, and I think the only admissible, method

under our constitution.  Requiring it under this charter, gives natural effect to all of the provisions, while unless this is done, there is a valuation made for no purpose whatever. I think the charter can be maintained as valid in this way, and that such is the natural and proper construction.

While I concur in the result, therefore, I think also, that the charter has not been complied with, in the method of assessment.  Upon the remaining questions, as no opinion has been expressed by the rest of the court, there is no occasion to make any remark.